## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| MONITRONICS INTERNATIONAL, INC., | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO.: |
| vs. | ) ) | CV _____ |
| OPTOM, INC., an Alabama corporation, AXIS SECURITY INC., an Idaho corporation, CHARLES C. "CHRIS" BURRUP, an individual, MONIQUE JONES, an individual, PATRICK THORNBURGH, an individual, and TAMMY LABRUYERE, an individual, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## <u>VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES</u>

Plaintiff, Monitronics International, Inc. ("Moni"), hereby brings the following Complaint against Defendants Optom, Inc. ("Optom"), Axis Security, Inc. ("Axis"), Charles C. "Chris" Burrup, Monique Jones, Patrick Thornburgh, and Tammy LaBruyere.

## <u>PARTIES, JURISDICTION AND VENUE</u>

1.      Plaintiff Moni is a Texas corporation with its principal place of business in Dallas, Texas.  Moni is authorized to do business in Alabama, and is in the business of providing monitored security system services to residential and commercial customers.  Moni is the successor-in-interest to Security Networks LLC, having acquired Security Networks and all of its assets in 2013.

2.     Defendant Optom is an Alabama corporation with its principal place of business in Baldwin County, Alabama, and which does business by agent throughout Alabama.  Optom is in the business of marketing, selling, and installing electronic security systems.

3.     Defendant Axis is an Idaho corporation that does business by agent throughout Alabama.  Axis is or was in the business of marketing, selling, and installing electronic security systems.  Upon information and belief, Axis is now doing business under the Optom name, and/or Defendant Optom is the successor-in-interest or the alter ego of Defendant Axis.

4.     Defendant Charles C. "Chris" Burrup is an individual residing in Baldwin County, Alabama, and has engaged in the conduct described below within the Southern District of Alabama.  Burrup is a principal, officer and/or director of Optom and was also a principal, officer and/or director of Axis.

5.     Defendant Monique Jones is an individual residing in Gulfport, Mississippi, and has engaged in the conduct described below within the Southern District of Alabama.   Jones is an employee of Optom and was also an employee of Axis.

6.     Defendant Patrick Thornburgh is an individual residing in Pensacola, Florida, and has engaged in the conduct described below within the Southern District of Alabama.  Thornburgh is an employee of Optom and was also an employee of Axis.

7.     Tammy LaBruyere is an individual residing in Mobile, Alabama, and has engaged in the conduct described below within the Southern District of Alabama.  LaBruyere is an employee of Optom and was also an employee of Axis.

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

9.      Venue for this action is proper in this judicial district pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

**Underlying Facts**

10.     On or about February 11, 2010, defendant Axis entered into an Affiliate Agreement with Security Networks, LLC (referenced as the "Company"), pursuant to which Axis agreed to market, sell, and install electronic security systems exclusively on behalf of the Company in the counties of Baldwin, Jefferson, Lee, Mobile, Shelby, and Tuscaloosa in Alabama.  Defendant Burrup joined in the Affiliate Agreement as a guarantor.

11.     In connection with the execution of the Affiliate Agreement, Defendants Axis and Burrup also entered into a Nonsolicitation and Nondisclosure Agreement ("Axis Nonsolicitation Agreement") with the Company, pursuant to which Axis and Burrup agreed, among other things, not to solicit the Company's customers or accounts.   A copy of the Axis Nonsolicitation Agreement is attached hereto as <u>Exhibit A</u> and is incorporated herein by reference.  The Axis Nonsolicitation Agreement was entered into by Axis as the "Affiliate," and by Burrup as one of the "Principals" of Axis.

12.     In executing the Axis Nonsolicitation Agreement, Axis and Burrup agreed as follows:

> <u>Nonsolicitation and Nonacceptance</u>.  Affiliate and the Principals agree never to, either directly or indirectly, solicit and accept (if contacted), at any time in the future, any of the Company's customers or accounts, including customers and accounts accepted by Company under the Affiliate Agreement for the purpose of providing electronic security, guard, intercom, central vacuum, home automation, home theater, audio systems or related services (collectively, the "Services"). This provision applies both to the customers and the residence or place of business occupied by such customers.  In the event Affiliate or the Principals are contacted by such customers, Affiliate and the Principals will inform such

customers that they cannot provide the Services to such customers. Affiliate and the Principals agree to do so in a polite manner and to refer all such customers to Company with a positive recommendation. In addition, Affiliate and the principals agree that they will never disparage the services, business or reputation of Company by making false or misleading statements to another person.

(Axis Nonsolicitation Agreement at ¶ 1).

13.     Furthermore, by executing the Axis Nonsolicitation Agreement, Axis and Burrup acknowledged that they received and possessed confidential and proprietary trade secret information belonging to the Company, and they agreed not to disclose or use such information for their own benefit, or the benefit of others, as follows:

> Nondisclosure. Affiliate and the Principals acknowledge that they possess certain confidential, proprietary and trade secret information, materials and business concepts with respect to the operation of the security alarm business of Company, including among other things the marketing, selling, installing, monitoring and servicing of security alarm systems (the "Security Business"), including information regarding sales and marketing, products, services, vendors, customer lists and files (including former customers), accounting data and methods, operating procedures, pricing policies, strategic plans, intellectual property, customer contracts and other agreements, and manufacturer's warranties (collectively, the "Proprietary Information"). Affiliate and the Principals agree: (i) never to publish, copy, disclose, allow to be disclosed, or use for their own benefit or for the benefit of any other person, firm, corporation or entity, the Proprietary Information without the prior written consent of Company, which can be withheld in its sole discretion, and (ii) to maintain strictly the confidentiality of the Proprietary Information at all times. Affiliate and the Principals agree to take all necessary precautions to protect the Proprietary Information from unauthorized disclosure or use. Upon the termination of the Affiliate Agreement, Affiliate will promptly deliver all Proprietary Information to Company. Affiliate and the Principals acknowledge and agree that in any proceeding to enforce this Agreement it will be presumed that the Proprietary Information constitutes protectable trade secrets, and that Affiliate and the Principals will bear the burden of proving that any portion of the Proprietary Information was publicly or rightfully known and disclosed by Affiliate and the Principals. Upon Company's request, Affiliate and/or the Principals agree to execute and deliver to Company an affidavit as to the complete and proper return of all Proprietary Information to Company.

(Axis Nonsolicitation Agreement at ¶ 2).

14.     In the Axis Nonsolicitation Agreement, Axis and Burrup acknowledged that the agreement was necessary for the legitimate business interests of the Company in engaging Axis as a marketer of the Company's products and services.  (Axis Nonsolicitation Agreement at ¶ 4). Defendants further acknowledged that the scope of the Axis Nonsolicitation Agreement regarding duration and the level of activities restricted is reasonable.  (Id).

15.      In addition, each employee of Axis that marketed security system services on behalf of the Company signed a separate Non-Solicitation & Non-Disclosure Agreement by and between Axis, the Company, and the individual ("Individual Non-Solicitation Agreements") which provides:

> During the term of Representative's employment with Affiliate and at all times thereafter, Representative will not solicit or accept (if contacted) any customer or account of Affiliate or of Company for the purpose of providing electronic security monitoring or related services. This includes customers and accounts accepted by Company under the Affiliate Agreement between Affiliate and Company (the "Affiliate Agreement").  In  addition, Representative agrees never to disparage the services, business or reputation of Company or Affiliate. Nothing in this Agreement, however, is intended to prevent Representative from being self-employed or from working for any other person or company, including any competitor of Affiliate or Company.

(Individual Non-Solicitation Agreements at ¶ 1).

16.     Defendants Jones, Thornburgh, and LaBruyere each executed an Individual Non-solicitation Agreement, a copy of which is attached hereto as Exhibit B and incorporated herein by reference.

17.     Defendants Jones, Thornburgh, and LaBruyere acknowledged in the Individual Non-Solicitation Agreements that certain confidential information and materials with respect to the Company's business, including but not limited to information regarding customers, contracts, sales and marketing strategies, products, services, pricing policies and operating procedures (the

"Confidential Information") would be disclosed to the individuals in conjunction with their work, and each agreed not to copy, disclose, or use that Confidential Information for his or her own benefit or for the benefit of someone else. (Individual Non-Solicitation Agreements at ¶ 2).

18.     Defendants Jones, Thornburgh, and LaBruyere further agreed that the Individual Non-Solicitation Agreements were necessary for the legitimate business interests of the Company and that the scope of the agreement regarding duration and the level of activities restricted is reasonable. (Individual Non-Solicitation Agreement at ¶ 3).

19.     In 2013, Plaintiff acquired the Company and all of its customer accounts.   Axis continued to serve as a dealer to market, sell, and install electronic security systems exclusively on behalf of Plaintiff, until Axis provided notice of termination of its dealer agreement, effective February 11, 2015.

20.     Thereafter, some of the principals, officers, directors and/or employees of Axis formed and began working for Defendant Optom, and later began using that entity to market, sell, and install electronic security systems on behalf of Vector Security Inc. ("Vector"), a competitor of Plaintiff. Vector also provides monitored security system services to residential and commercial customers.

21.     Burrup is listed on the Certificate of Formation for Optom as the sole Director of the company.  Optom and Burrup, as a principal, officer, and/or director of Optom, engaged or hired individual Defendants Jones, Thornburgh, and LaBruyere, who were formerly employees of Axis, to market, sell, and install electronic security systems for Optom on behalf of Vector.

22.     Available information indicates that Optom is being operated as a continuation of the Axis entity, or it is a successor-in-interest or an alter ego of Axis.  For example, Optom and Axis both operated offices located in Daphne, Alabama in close proximity to each other.  At least

five of Axis's sales representatives are now working for Optom, including Jones, Thornburgh, and LaBruyere.  The website for Optom (Optominc.com), on its "benefits" page, refers to the "AXIS Lifetime Maintenance Program."  Optom was formed in 2015, but the Better Business Bureau website states that Optom has been in business since 2010, which is the year that Axis was incorporated.

23.     In or around October 2015, Defendants began soliciting current customers of Plaintiff in direct violation of the Axis Nonsolicitation Agreement and the Individual Non-Solicitation Agreements.

24.     Upon information and belief, Burrup is soliciting Plaintiff's customers that were previously sold by Axis through his employees at Optom, in violation of the Axis Nonsolicitation Agreement, and such conduct is wrongfully interfering with Plaintiff's business and contractual relationships. Plaintiff is aware of specific customers that Jones, Thornburgh, and LaBruyere have solicited which were originally sold by Axis.

25.     Defendants have unlawfully targeted and re-solicited customers and accounts previously sold by Axis on behalf of Plaintiff or its predecessor, as well as other customers of Plaintiff.  Since October 2015, Defendants have solicited and taken more than 100 of Plaintiff's customers residing in Mobile, Theodore, Saraland, Satsuma, Daphne, Foley, Whistler, Grand Bay, Loxley, Chickasaw, Daphne, Bay Minette, Spanish Fort, and other locations.

26.      Defendants are wrongfully using Plaintiff's confidential and proprietary information, including customer and pricing information, to call on and solicit Plaintiff's customers.

27.     In addition, Defendants have used false and misleading statements to deceive customers into switching their alarm monitoring service away from Plaintiff, including making

misrepresentations that Plaintiff was going out of business, that Plaintiff was bought out by Vector, and that Vector was a sister company of Plaintiff.  Defendants also sometimes misrepresented that they were representatives of Plaintiff, and then surreptitiously switched the account to Vector without the customer's consent.

28.     Plaintiff has suffered damages in excess of $150,000 as a result of Defendants' illegal and wrongful conduct and the conduct is ongoing.

29.     On or about December 27, 2016, Plaintiff sent a demand letter to Optom and Burrup, demanding, among other things, that Optom, Burrup, and others working for Optom cease and desist from soliciting, contacting, and recruiting Plaintiff's customers, and from engaging in conduct that interferes with Plaintiff's business and its relationships with its customers.  Plaintiff also demanded the return of any and all customer contracts, customer information, and other confidential and proprietary information involving Plaintiff's customers. A copy of the letter is attached hereto as Exhibit C and incorporated herein by reference.

30.     Nevertheless, Defendants have continued to solicit Plaintiff's customers and to interfere with Plaintiff's business and contractual relationships, and Defendants have failed and refused to return Plaintiff's confidential and proprietary information.

31.     Defendants Axis and Burrup agreed in the Axis Nonsolicitation Agreement that immediate and irreparable damage will result if they refuse to perform their obligations under the Nonsolicitation Agreement, and that an injunction may be sought without the posting of bond to restrain such conduct.  (Axis Nonsolicitation Agreement at ¶ 6).

32.     Defendants Jones, Thornburgh, and LaBruyere acknowledged in the Individual Non-Solicitation Agreements that immediate and irreparable damage will occur if the individual

violates the agreement, and that Company may seek an injunction without the posting of bond or other security. (Individual Non-Solicitation Agreements at ¶ 2).

33. The Axis Nonsolicitation Agreement further provides that Defendants will pay all of Plaintiff's reasonable legal fees and costs in enforcing the contract.

## COUNT ONE
### (Injunctive Relief)

34. Plaintiff restates and incorporates by reference all preceding paragraphs, as if fully set forth herein.

35. Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff seeks a preliminary injunction and permanent injunction enjoining the Defendants from contacting, soliciting, or recruiting Plaintiff's customers and any other conduct that interferes with Plaintiff's business relationships with its customers.

36. Plaintiff also seeks a preliminary and permanent injunction enjoining the Defendants from interfering with the nonsolicitation agreements, either directly or by aiding, abetting, encouraging, and causing the other Defendants to violate the nonsolicitation agreements.

37. Plaintiff further seeks a preliminary and permanent injunction requiring the Defendants to return any and all customer contracts, customer information, and other confidential and proprietary information involving Plaintiff's customers.

38. Defendants have knowingly and intentionally breached the Axis Nonsolicitation Agreement and the Individual Non-Solicitation Agreements, have intentionally interfered with Plaintiff's business and contractual relationships, and have misappropriated Plaintiff's confidential information and trade secrets to benefit themselves and others at Plaintiff's expense.

39.     Plaintiff will be irreparably harmed if the injunctive relief is not granted, and the Plaintiff has no adequate remedy at law.  Defendants have contractually acknowledged in the Axis Nonsolicitation Agreement and the Individual Non-Solicitation Agreements that immediate and irreparable harm will result from a breach of those agreements, and that no bond should be required to obtain injunctive relief.

40.     Plaintiff has a substantial likelihood of success on the merits of this case, and the entry of a preliminary and permanent injunction will not conflict with the public interest.

### COUNT TWO
### (Breach of Contract - Axis Nonsolicitation Agreement)

41.     Plaintiff restates and incorporates by reference all preceding paragraphs, as if fully set forth herein.

42.     Defendants Axis and Burrup have breached, and are continuing to breach, the Axis Nonsolicitation Agreement in the manner described above.

43.     Defendant Optom, as successor-in-interest or alter ego of Axis, is also liable for breach of the Axis Nonsolicitation Agreement.

44.     As a direct and proximate result of these breaches, Plaintiff has suffered and will continue to suffer the irreparable harm and damages described above.

### COUNT THREE
### (Breach of Contract - Individual Non-Solicitation Agreements)

45.     Plaintiff restates and incorporates by reference all preceding paragraphs, as if fully set forth herein.

46.     Defendants Jones, Thornburgh, and LaBruyere have breached, and are continuing to breach the Individual Non-Solicitation Agreements in the manner described above.

10

47.     As a direct and proximate result of these breaches, Plaintiff has suffered and will continue to suffer the irreparable harm and damages described above.

### COUNT FOUR
### (Violation of the Alabama Trade Secrets Act  - Ala. Code 8-27-1, et seq. )

48.     Plaintiff restates and incorporates by reference all preceding paragraphs, as if fully set forth herein.

49.     Defendants Axis and its principal, Burrup, have obtained valuable, confidential trade secret information from Plaintiff through their previous engagement as an independent dealer to market, sell, and install electronic security systems on behalf of Plaintiff and its predecessor.   Defendants have acknowledged and agreed that the information constitutes protectable trade secrets.

50.     Defendants Jones, Thornburgh, and LaBruyere have also obtained valuable, confidential trade secret information of Plaintiff through their employment with Axis and in conjunction with marketing, selling, and installing electronic security systems on behalf of Plaintiff and its predecessor, as acknowledged in the Individual Non-Solicitation Agreements.

51.     Defendants have disclosed these trade secrets to Defendant Optom and/or utilized the confidential trade secret information for the benefit of Optom and themselves, in violation of the Alabama Trade Secrets Act.

52.     Defendant Optom has wrongfully obtained and utilized Plaintiff's trade secret information through the other Defendants.

53.     Defendants have used and are now using the confidential and trade secret information obtained from Plaintiff to solicit and take Plaintiff's current customers, in violation of the Alabama Trade Secrets Act.

54.     As a direct and proximate result of the Defendants' violation of the Alabama Trade Secrets Act, Plaintiff has suffered and will continue to suffer irreparable harm and damages as described above.

## COUNT FIVE
### (Interference with Business and Contractual Relationships - Customers)

55.     Plaintiff restates and incorporates by reference all preceding paragraphs, as if fully set forth herein.

56.     Plaintiff has a protectable interest in its customer contracts and business relationships with its customers.

57.     Defendants are aware of Plaintiff's business and contractual relationships with its customers, having gained access to this information while acting as a dealer, principal, or employee of a dealer, in the marketing, selling, and installing electronic security systems on behalf of Plaintiff and its predecessor.

58.     Defendants have intentionally interfered with Plaintiff's business and contractual relationships, as described above, and Plaintiff has suffered irreparable harm and damage as a result of the interference.

## COUNT SIX
### (Interference with Business and Contractual Relationships - Nonsolicitation Agreements)

59.     Plaintiff restates and incorporates by reference all preceding paragraphs, as if fully set forth herein.

60.     Plaintiff has a protectable interest in the Axis Nonsolicitation Agreement and the Individual Non-Solicitation Agreements.

61.     Defendant Optom is aware of the existence of these nonsolicitation agreements, and it has intentionally interfered with them by aiding, abetting, encouraging, and causing the other Defendants to violate the nonsolicitation agreements for the benefit of Optom.

62.     Defendant Burrup is aware of the existence of the Individual Non-Solicitation Agreements, and he has intentionally interfered with them by aiding, abetting, encouraging, and causing Jones, Thornburgh, and LaBruyere to violate agreements for the benefit of Optom.

63.     Plaintiff has suffered irreparable harm and damage as a result of the interference as described herein.

<u>**COUNT SEVEN**</u>
<u>**(Conspiracy)**</u>

64.     Plaintiff restates and incorporates by reference all preceding paragraphs, as if fully set forth herein.

65.     At all material times, Defendants have conspired together to further the plan and purposes described above, and specifically to violate and interfere with the Axis Nonsolicitation Agreement and the Individual Non-Solicitation Agreements, to interfere with the business and contractual relationships between Plaintiff and its customers, and to wrongfully use Plaintiff's confidential and trade secret information to solicit and take Plaintiff's customers in violation of the Alabama Trade Secrets Act.

66.     Plaintiff has suffered harm and injury as a proximate result of the conspiracy and scheme of Defendants as described herein.

**Prayer for Relief**

WHEREFORE PREMISES CONSIDERED Plaintiff prays that the Court will take jurisdiction of this matter and

A.      Enter a preliminary injunction that (i) Enjoins all Defendants from contacting, soliciting, or recruiting Plaintiff's customers and any other conduct that interferes with Plaintiff's business relationships with its customers; (ii) Enjoins all Defendants from interfering with the nonsolicitation agreements, either directly or by aiding, abetting, encouraging, and causing the other Defendants to violate the nonsolicitation agreements; and (iii)  Requires the Defendants to return any and all customer contracts, customer information, and other confidential and proprietary information involving Plaintiff's customers;

B.      Enter a final judgment that permanently enjoins Defendants from contacting, soliciting, or recruiting Plaintiff's customers and any other conduct that interferes with Plaintiff's business relationships with its customers, and enjoins Defendants from interfering with the nonsolicitation agreements;

C.      Award compensatory and punitive damages against Defendants;

D.      Awards Plaintiff all of the costs, expenses and attorneys' fees incurred by it in pursuing this action;

E.      Enter an Order granting Plaintiff leave to conduct expedited discovery so that it can more completely prepare for a hearing on a preliminary injunction; and

F.      Award Plaintiff any such further and different relief as the Court may deem proper based on the evidence.

Respectfully submitted,

s/*Crawford S. McGivaren, Jr.*                    s/*Jarrod J. White*         
Crawford S. McGivaren, Jr. MCGIC8378       Jarrod J. White  WHITJ1010

s/ *Diane B. Maughan*           
Diane B. Maughan  MAUGD4912

| | |
|---|---|
| CABANISS, JOHNSTON, GARDNER, DUMAS & O'NEAL LLP | CABANISS, JOHNSTON, GARDNER, DUMAS & O'NEAL LLP |
| 2001 Park Place North, Suite 700 | 63 S. Royal Street, Suite 700 |
| Birmingham, Alabama  35203 | Mobile, Alabama 36602 |
| Telephone: (205) 716-5200 | Telephone: (251) 415-7300 |
| Facsimile: (205) 716-5389 | Facsimile: (251) 415-7350 |
| csm@cabaniss.com | jjw@cabaniss.com |
| dbm@cabaniss.com | |

Attorneys for Plaintiff Monitronics International, Inc.

### DEFENDANTS TO BE SERVED BY CERTIFIED MAIL AS FOLLOWS:

| | |
|---|---|
| Optom, Inc. | Axis Security, Inc. |
| c/o Incorp Services, Inc. | c/o National Registered Agents Inc. |
| 2094 Myrtlewood Drive | 2 North Jackson Street Suite 605 |
| Montgomery, AL 36111 | Montgomery, AL 36104 |
| | |
| Charles C. "Chris" Burrup | Patrick Thornburgh |
| 27370 Meade Trl | 6121 Azalea Rd. |
| Loxley AL 36551-4127 | Pensacola, FL 32504 |
| | |
| Charles C. "Chris" Burrup | Tammy LaBruyere |
| 9241 Sanibel Loop | 1645 Rochelle St. |
| Daphne AL 36526-6454 | Mobile, AL 36693 |
| | |
| Monique Jones | |
| 3805 Monterey Dr. | |
| Gulfport, MS 39501 | |

## VERIFICATION

As the Senior Director, Legal Compliance of Monitronics International, Inc., I hereby verify that the factual allegations of this Complaint are true and correct to the best of my knowledge, information, and/or belief.

Monitronics International, Inc.

By:  Jennifer McCarley

Its:  Senior Director, Legal Compliance

**STATE OF TEXAS**　　　　　)

**DALLAS COUNTY**　　　　　)

Before me, the undersigned authority, a Notary Public in and for said County, in said State, personally appeared Jennifer McCarley, whose name is signed as Senior Director, Legal Compliance of Monitronics International, Inc., and who is known to me, and acknowledged before me on this day that he/she has read the foregoing Verified Complaint, being informed of the contents thereof and has signed the same voluntarily.

**SWORN TO AND SUBSCRIBED** before me, this 22nd day of May 2017.



Notary Public
My commission ends:  9-18-17

> BARBARA G. WILHITE
> MY COMMISSION EXPIRES
> September 18, 2017